United States District Court
Southern District of Texas
**ENTERED**
March 05, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LA BRANDON WASHINGTON, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:23-CV-2781 |
| § | |
| BP PRODUCTS NORTH AMERICA INC., § | |
| § | |
| Defendant. § | |

# **ORDER**

Before the Court is a motion to remand filed by the plaintiff, La Brandon Washington ("Washington"). (Dkt. 4). After careful consideration of the pleadings, the record, and the applicable law, the Court respectfully **DENIES** the motion.

The issue presented by this motion to remand is whether the forum-defendant rule articulated in 28 U.S.C. § 1441(b)(2) applies. In order to decide that issue, the Court must determine whether Defendant BP Products North America Inc.'s ("BP") principal place of business is in Texas (as Washington argues) or Illinois (as BP argues). This determination is guided by the "nerve center" test set out by the Supreme Court in *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).

Under the "nerve center" test, a corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* "[I]n practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.,* the 'nerve center,' and not simply an office where the

corporation holds its board meetings . . . attended by directors and officers who have traveled there for the occasion[.]" *Id.* at 93. "[I]f the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York." *Id.* at 96. "A corporation's nerve center . . . is a single place." *Id.* at 93 (quotation marks omitted). !

To prove that BP's nerve center is in Texas, Washington points to three things: (1) a Texas Franchise Tax Public Information Report that BP filed with the State of Texas for the 2022 reporting year that lists BP's "principal office" and "principal place of business" as 501 Westlake Park Blvd. in Houston; (2) an amendment to BP's Texas corporate registration that BP filed in 2022 that lists the company's address as 501 Westlake Park Blvd. in Houston; and (3) statements from BP's parent company's website and 2022 annual report indicating that BP's parent company is based in Houston. (Dkt. 4-1 at pp. 5–8). In response, BP presents two affidavits, one from its Assistant Secretary and one from its Vice President of Refining at Cherry Point Refinery (the refinery at which Washington was allegedly injured), averring that its Chairman and President, Amber Russell ("Russell"), works in Illinois; that most of its employees ultimately report to Russell; and that its major business, policy, and operational decisions are made in Illinois. (Dkt. 7-1; Dkt. 7-2).

The Court concludes that, with its affidavits, BP has carried its burden, as the removing party, to show that its nerve center is in Illinois. The Court further notes that Judge Ellison, on an apparently similar record, recently denied a motion to remand in which the plaintiff asserted that BP's nerve center lies in Texas. *See* Southern District of Texas case number 4:22-CV-2188 at docket entry 56.

—*BP's documents*

On this record, the Court does not consider BP's Texas franchise tax filings to be persuasive evidence that BP's nerve center is in Texas. The Supreme Court has cautioned against overreliance on corporate filings when determining the location of a corporation's principal place of business for jurisdictional purposes. *Id.* at 97 ("[W]e reject suggestions such as, for example, the one made by petitioner that the mere filing of a form like the Securities and Exchange Commission's Form 10–K listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center.'"). More specifically, the *Hertz* Court noted that, to take one example, the definition of the term "principal executive office" in the tax-lien context differs from the definition of the term "principal place of business" in the context of federal subject matter jurisdiction. *Id.* Similarly, judges in this District have explained that the Texas Tax Code does not define the term "principal place of business" and that—unlike under the *Hertz* test—under Texas law a company may have more than one principal office. *Lee Construction and Maintenance Co. v. Benavides Independent School District*, No. 2:17-CV-212, 2018 WL 4333997, at *5 & n.2 (S.D. Tex. May 30, 2018); *Balachander v. AET Inc. Ltd.*, No. 4:10-CV-4805, 2011 WL 4500048, at *8–9 (S.D. Tex. Sept. 27, 2011); *see also In re Missouri Pacific Railroad Co.*, 998 S.W.2d 212, 219–20 (Tex. 1999) (noting that, under federal law, "a corporation has only one principal place of business for diversity purposes" but concluding that, under Texas venue law, "[a] company may control or direct its daily affairs in Texas through decision makers of substantially equal responsibility and

authority in different offices in the state[,]" in which "case each office may be a principal office of the company").

Washington presents no authority showing that the listing of a place as a corporation's principal place of business on a Texas Franchise Tax Public Information Report establishes that place as the corporation's nerve center for federal jurisdictional purposes. *Cf. Balachander*, 2011 WL 4500048 at *8–9 ("The Texas Tax Code . . . does not define 'principal place of business.' And the plaintiffs have identified no authority suggesting that the definition is the same as under [the federal diversity jurisdiction statute]."). Some courts have left open the possibility that tax forms can be relevant to the determination of a corporation's principal place of business if those forms are accompanied by "ample other competent evidence, including[, for instance,] sworn statements from corporate executives with personal knowledge." *VanLue v. Schoeller Bleckmann America, Inc.*, No. 4:18-CV-3608, 2018 WL 5791957, at *4 (S.D. Tex. Nov. 5, 2018). Washington, however, has not produced any such evidence.

"The corporate-registration statements [provided by Washington] are unpersuasive for essentially the same reasons" as the franchise tax filings. *Balachander*, 2011 WL 4500048 at *9. BP stated in its corporate-registration documents that its address is 501 Westlake Park Blvd. in Houston, but there is no basis to conclude that this address constitutes BP's nerve center under *Hertz*. "None of [the corporate registration] documents speaks to where the actual direction, control, and coordination [of BP's activities] take place." *Id.* (quotation marks omitted).

"*Hertz*'s clear emphasis is on where the corporation is actually controlled, not where buildings are located, or where the bulk of the corporation's operations are located, or where corporate filings conclusorily state the primary office is located." *Id.* at *10. On this record, the BP documents provided by Washington "fail[] to show . . . that the Houston address represents anything 'more than a mail drop box' for [BP]." *Elizondo v. Keppel Amfels L.L.C.*, No. 1:14-CV-220, 2015 WL 1976434, at *6 (S.D. Tex. May 1, 2015); *see also Hertz*, 559 U.S. at 97 ("[I]f the record reveals . . . that the alleged 'nerve center' is nothing more than a mail drop box . . . the courts should instead take as the 'nerve center' the place of actual direction, control, and coordination[.]"). Accordingly, the BP documents provided by Washington do not constitute sufficient evidence to establish that BP's nerve center is in Texas.

—*BP's parent company's website and annual report*

Washington also relies on statements from BP's parent company's website and 2022 annual report indicating that BP's parent company is based in Houston. However, the nerve center of BP's parent is not necessarily the nerve center of BP. "It is well established that a subsidiary corporation which is incorporated as a separate entity from its parent corporation is considered to have its own principal place of business." *Blanca Peak Resources, LLC v. Big Star Energy Limited*, No. 3:20-CV-141, 2020 WL 1445785, at *3 (N.D. Tex. Mar. 24, 2020) (quotation marks omitted). "There is an exception to this rule: the subsidiary takes the citizenship of the parent when it is not really a separate entity." *Burnside v. Sanders Associates, Inc.*, 507 F. Supp. 165, 166 (N.D. Tex. 1980), *aff'd*, 643 F.2d 389 (5th Cir. 1981) (quotation marks omitted). However, Washington has not cited

any evidence or any legal authority demonstrating that BP's parent's citizenship, assuming that BP's parent is a citizen of Texas for the purposes of diversity jurisdiction, should be imputed to BP.

The record in this case does not show that the forum-defendant rule articulated in 28 U.S.C. § 1441(b)(2) applies. BP has carried its burden, as the removing party, to show that its nerve center is in Illinois. Accordingly, Plaintiff La Brandon Washington's motion to remand (Dkt. 4) is respectfully **DENIED**.

SIGNED at Houston, Texas on March 5, 2024.

*George C. Hanks Jr.*
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE